**Case No. 20-10894-H**

_____

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

JACOB ZOWIE THOMAS RENSEL, WANG YUN HE, CHI HAO POON, KING
FUNG POON, JAE J. LEE, MATEUSZ GANCZAREK, and RODNEY
WARREN, individually and on behalf of others similarly situated,

Plaintiffs-Appellants,

v.

CENTRA TECH, INC.,

Defendant-Appellee

_____

*On Appeal from the United States District Court for the Southern District of
Florida, Case No. 1:17-cv-24500-RNS/JB*

_____

PLAINTIFFS-APPELLANTS OPENING BRIEF

_____

Emily C. Komlossy
KOMLOSSY LAW P.A.
4700 Sheridan St., Suite J
Hollywood, FL 33021
Telephone: (954) 842-2021

Donald J. Enright
LEVI & KORSINSKY, LLP
1101 30th Street, N.W., Ste 115
Washington, DC 20007
Telephone: (202) 524-4290

James Taylor-Copeland
*Pro Hac Vice Application
Pending*
TAYLOR-COPELAND LAW
501 W. Broadway, Suite 800
San Diego, CA 92010
ph: 619-400-4944

John A. Carriel
ZELLE LLP
1775 Pennsylvania Ave, NW, Ste 375
Washington, DC 20006
Telephone: (202) 899-4111

*Attorneys for Plaintiffs-Appellants*

## CERTIFICATE OF INTEREST

Appellants file this Certificate of Interested Persons, listing the parties and entities interested in this appeal, as required by 11th Cir. R. 26.1.

### __Interested Persons__

Carriel, John A. – Counsel for Plaintiffs / Appellants

Centra Tech, Inc. – Defendant / Appellee (no ticker symbol)

Enright, Donald J. – Counsel for Plaintiffs / Appellants

Ganczarek, Mateusz – Plaintiff / Appellant

Gil, Frank E. – Counsel for Defendant / Appellee

The Law Office of Frank E. Gil, P.A. – Counsel for Defendant / Appellee

He, Wang Yun – Plaintiff / Appellant

Komlossy, Emily Cornelia – Counsel for Plaintiffs / Appellants

Komlossy Law P.A. – Counsel for Plaintiffs / Appellants

Lee, Jae J. – Plaintiff / Appellant

Levi & Korsinsky, LLP – Counsel for Plaintiffs / Appellants

Poon, Chi Hao – Plaintiff / Appellant

Poon, King Fung – Plaintiff / Appellant

Rensel, Jacob Zowie Thomas – Plaintiff / Appellant

Scola, Jr., The Honorable Judge Robert N. (Trial Judge)

Sharma, Sohrab – Owner of Defendant Centra Tech, Inc. / Appellee

Taylor-Copeland, James – Counsel for Plaintiffs / Appellants

Taylor-Copeland Law – Counsel for Plaintiffs / Appellants

Tripodi, Elizabeth K. – Counsel for Plaintiffs / Appellants

Warren, Rodney – Plaintiff / Appellant

Zelle LLP – Counsel for Plaintiffs / Appellants

**STATEMENT REGARDING ORAL ARGUMENT**

Plaintiffs respectfully request the Court to schedule oral argument in this matter.  Plaintiffs believe that oral argument may assist the Court should it have any questions or concerns regarding novel issues concerning cryptocurrencies, blockchain technologies and/or "smart contracts" related to the legal questions at issue.

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ............................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ...............................................i

TABLE OF AUTHORITIES ..............................................................................iv

JURISDICTIONAL STATEMENT ......................................................................1

STATEMENT OF ISSUES ON APPEAL ............................................................1

STATEMENT OF THE CASE ............................................................................2

    I.     Factual Background...............................................................................2

    II.    Procedural Background .........................................................................4

        A.    The PSLRA's Automatic Stay on Discovery Barred
Plaintiffs From Obtaining Any Discovery Until The Court
Ruled On All Motions To Dismiss ............................................5

        B.    The Action is Reassigned and Parties Request A
Scheduling Order ......................................................................6

        C.    Plaintiffs' First Motion For Class Certification.........................7

            1.    The District Court Orders Plaintiffs To Move For
Default Judgment Thus Compelling Plaintiffs to
Move for Class Certification Prior to Obtaining Any
Pre-Certification Discovery ..............................................7

            2.    The District Court Denies Plaintiffs' First Motion
for Class Certification.....................................................10

        D.    Plaintiffs' Renewed Motion For Class Certification ...............11

            1.    Plaintiffs File Their Renewed Motion For Class
Certification As Authorized By The District Court .......11

            2.    The District Court Denies Plaintiffs' Renewed
Motion for Class Certification ........................................14

        E.    Plaintiffs Obtain Final Default Judgment On Their
Individual Claims And File The Instant Appeal.......................15

STANDARD OF REVIEW ...............................................................................15

SUMMARY OF ARGUMENT .........................................................................16

    I.     First Motion......................................................................................16

    II.    Renewed Motion ...............................................................................18

ARGUMENT ..................................................................................................19

I.    The District Court Abused Its Discretion in Denying Plaintiffs' First Motion for Class Certification...........................................................19

    A.    The District Court Erred In Finding Plaintiffs' First Motion Untimely.....................................................................19

        1.    The District Court's Timeliness Determination Is In Direct Conflict With Federal and Local Rules...............20

        2.    The District Court Abused Its Discretion Finding the First Motion Untimely Despite Failing to Enter a Scheduling Order ..........................................................23

        3.    The District Court Abused Its Discretion By Applying the Incorrect Legal Standard in Its Timeliness Determination................................................27

        4.    The District Court Abused Its Discretion By Failing to Adequately Review and Consider the Record In Reaching Its Erroneous Determination That the First Motion Was Untimely ...................................................31

    B.    The District Court Abused Its Discretion When It Determined That Plaintiffs Were Unable to Demonstrate That Their Proposed Classes Were Ascertainable....................38

II.    The District Court Abused Its Discretion in Denying Plaintiffs' Renewed Motion for Class Certification.............................................48

    A.    The District Court Abused Its Discretion By Refusing to Consider the Merits of the Renewed Motion Despite Having Explicitly Approved Its Filing ......................................48

    B.    The District Court Abused its Discretion in Treating the Renewed Motion as a Motion for Reconsideration ..................53

    C.    The District Court Deprived Plaintiffs Of An Opportunity to Propose A Revised or Narrowed Class Definition ...............59

CONCLUSION .............................................................................................62

# TABLE OF AUTHORITIES

## CASES

*Abs Entm't v. CBS Corp.*,
  908 F.3d 405 (9th Cir. 2018) ................................................................. 21, 22, 32

*Acticon AG v. China N. E. Petroleum Holdings Ltd.*,
  687 F. App'x 10 (2d Cir. 2017) ............................................................38

*Alderman v. GC Servs. Ltd. P'ship*,
  No. 2:16-CV-14508, 2018 U.S. Dist. LEXIS 10205 (S.D. Fla. Jan. 19, 2018) ...45

*Alikhani v. United States*,
  200 F.3d 732 (11th Cir. 2000) ............................................................53

*Andreas-Moses v. Hartford Fire Ins. Co.*,
  326 F.R.D. 309 (M.D. Fla. 2018) ................................................... 54, 59

*Arkin v. Innocutis Holdings*, LLC,
  188 F. Supp. 3d 1304 (M.D. Fla. 2016) ............................................47

*Badger Auctioneers, Inc. v. Ali*,
  No. 6:16-cv-572-Orl-31TBS, 2017 U.S. Dist. LEXIS 8857 (M.D. Fla. Jan. 10,
  2017) ................................................................................................. 26, 29

*Bianchi v. Dynamic Recovery Solutions*,
  No. 13-61997, 2015 WL 12711584 (S.D. Fla. April 28, 2015) ..........................23

*Brown v. Electrolux Home Prod., Inc.*,
  817 F.3d 1225 (11th Cir. 2016) ................................................... 43, 58

*Bussey v. Macon Cty. Greyhound Park, Inc.*,
  562 F. App'x 782 (11th Cir. 2014) ....................................................39

*Carrera v. Bayer Corp.*,
  727 F.3d 300 (3d Cir. 2013) ...............................................................46

*Carriuolo v. Gen. Motors Co.*,
  823 F.3d 977 (11th Cir. 2016) ............................................................54

iv

*China Agritech, Inc. v. Resh*,
   138 S. Ct. 1800 (2018) ...................................................................21

*City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*,
   867 F.3d 434 (3d Cir. 2017) ..................................................... 46, 47

*Cooter & Gell v. Hartmarx Corp.*,
   496 U.S. 384 (1990) ......................................................................53

*Daniel v. Navient Sols., LLC*,
   328 F. Supp. 3d 1319 (M.D. Fla. 2018) ...................................... 33, 46

*DeBose v. Ellucian Co., L.P.*,
   No. 19-11701, 2019 WL 7288758 (11th Cir. Dec. 30, 2019) ..............24

*DeLeon-Granados v. Eller & Sons Trees, Inc.*,
   497 F.3d 1214 (11th Cir. 2007) ......................................................52

*Economakis v. Butler & Hosch*,
   No. 2:13-cv-832-FtM-38DNF, 2014 U.S. Dist. LEXIS 26779 (M.D. Fla. Mar. 1, 2014) ......................................................................................60

*Escolastico De Leon-Granados v. Eller & Sons Trees*,
   No. 1:05-CV-1473-CC, 2006 U.S. Dist. LEXIS 73781 (N.D. Ga. Sep. 28, 2006) ...........................................................................................52

*Gates v. Syrian Arab Republic*,
   396 U.S. App. D.C. 128 (2011) ......................................................61

*Gen. Tel. Co. of the Sw. v. Falcon*,
   457 U.S. 147 (1982) ................................................................. 32, 44

*Glatt v. Fox Searchlight Pictures, Inc.*,
   811 F.3d 528 (2d Cir. 2015) ..........................................................53

*Glover v. City of Pensacola*,
   372 F. App'x 952 (11th Cir. 2010).................................................16

*Grayson v. K Mart Corp.*,
   79 F.3d 1086 (11th Cir. 1996) .......................................................62

*Gross v. Medaphis Corp.*,
   977 F. Supp. 1463 (N.D. Ga. 1997) ...................................................................34

*Gustin v. Hoffman*,
   No. 6:08-cv-57-Orl-31DAB, 2008 U.S. Dist. LEXIS 116724 (M.D. Fla. Oct. 28, 2008) ............................................................................................................ 32, 34

*Herrera v. JFK Med. Ctr., Ltd. P'ship*,
   648 F. App'x 930 (11th Cir. 2016) ........................................................ 15, 31, 47

*Holt v. Ford*,
   862 F.2d 850 (11th Cir. 1989) ...........................................................................60

*Hudson v. Delta Air Lines*,
   90 F.3d 451 (11th Cir. 1996) .............................................................................60

*Hurley v. United States Healthworks Med. Grp. of Wash., P.S.*,
   No. CV-05-0017-EFS, 2006 U.S. Dist. LEXIS 44062 (E.D. Wash. June 27, 2006) ............................................................................................................ 26, 29

*In re Nat'l Austl. Bank Sec. Litig.*,
   2006 U.S. Dist. LEXIS 94163 (S.D.N.Y. Nov. 8, 2006) ....................................33

*In re Sportsline.com Secs. Litig.*,
   366 F. Supp. 2d 1159 (S.D. Fla. 2004)...............................................................33

*Jackson v. Nat'l Action Fin. Servs.*, Inc.,
   227 F.R.D. 284 (N.D. Ill. 2005) ........................................................................60

*Jefferson v. Best Buy Co.*,
   No. 2:08cv121-WKW, 2010 U.S. Dist. LEXIS 47058 (M.D. Ala. Mar. 18, 2010)
   .............................................................................................................. 25, 26, 29

*Klay v. Humana, Inc.*,
   382 F.3d 1241 (11th Cir.2004) ..........................................................................44

Klay v. United Healthgroup, Inc.,
   376 F.3d 1092 (11th Cir.2004) ..........................................................................16

*Manno v. Healthcare Revenue Recovery Grp.*, LLC,

No. 11-61357, 2012 WL 4192987 (S.D. Fla. Sept. 18, 2012) ............................45

*Martorella v. Deutsche Bank Nat. Tr. Co.*,
   931 F. Supp. 2d 1218 (S.D. Fla. 2013)..................................................33

*Maximiliano v. Simm Assocs.*,
   No. 17-cv-80341, 2017 U.S. Dist. LEXIS 226075 (S.D. Fla. Nov. 7, 2017) ......46

*Messner v. Northshore Univ. HealthSystem*,
   669 F.3d 802 (7th Cir. 2012) ...............................................................58

*Mey v. Enter. Fin. Grp., Inc.*,
   No. 215CV463FTM99MRM, 2016 WL 7364537 (M.D. Fla. Dec. 19, 2016) ....24

*Miller v. Wells Fargo Bank*, N.A.,
   No. 1:16-CV-21145-UU, 2017 U.S. Dist. LEXIS 24572 (S.D. Fla. Feb. 22,
   2017) .............................................................................................40

*Mills v. Foremost Ins. Co.*,
   511 F.3d 1300 (11th Cir. 2008) ............................................... 31, 44, 47

*Missouri ex rel. Koster v. Harris*,
   847 F.3d 646 (9th Cir. 2017) ...............................................................59

*Morrison v. Booth*,
   730 F.2d 642 (11th Cir. 1984) ............................................................44

*Neumont v. Florida*,
   198 F.R.D. 554 (S.D. Fla. 2000) ..........................................................55

*O'Connor v. Inch*,
   No. 17-60234-CV-COHN, 2019 U.S. Dist. LEXIS 123524 (S.D. Fla. July 23,
   2019) .............................................................................................48

*Perez v. Safelite Grp. Inc.*,
   553 F. App'x 667 (9th Cir. 2014).............................................. 32, 38

*Pitts v. Terrible Herbst, Inc.*,
   653 F.3d 1081 (9th Cir. 2011) ............................................................37

*Porter v. Collecto Inc.*,
  No. 14-21270, 2015 U.S. Dist. LEXIS 151379 (S.D. Fla. Nov. 2, 2015)..... 28, 30

*Prado-Steiman v. Bush*,
  221 F.3d 1266 (11th Cir. 2000) ................................................................. 55, 59

*Randy Rosenberg, D.C., P.A. v. GEICO Gen. Ins. Co.*,
  No. 19-CV-61422, 2019 WL 6828150 (S.D. Fla. Dec. 13, 2019) .......................33

*Reyes v. BCA Fin. Servs., Inc.*,
  2018 U.S. Dist. LEXIS 106449 (S.D. Fla. June 26, 2018)............................ 39, 54

*Saade v. Insel*, No. 17-22003-Civ-WILLIAMS/TORRES,
  2019 U.S. Dist. LEXIS 59189 (S.D. Fla. Apr. 4, 2019)................................ 28, 39

*Sali v. Corona Reg'l Med. Ctr.*,
  889 F.3d 623 (9th Cir. 2018) ..................................................................................58

*Santomenno v. Transamerica Life Ins. Co.*,
  316 F.R.D. 295 (C.D. Cal. 2016)............................................................................61

Satterwhite v. City of Greenville,
  578 F.2d 987 (5th Cir.1978) ...................................................................................44

*Schmidt v. Red Rock Fin. Servs., LLC*,
  No. 2:12-CV-1773 JCM PAL, 2013 WL 1501481 (D. Nev. Apr. 10, 2013) ......26

*Scott v. Family Dollar Stores, Inc.*,
  733 F.3d 105 (4th Cir. 2013) ..................................................................................62

*Shook v. El Paso Cnty.*,
  386 F.3d 963 (10th Cir. 2004) ................................................................................59

*Terrill v. Electrolux Home Prod., Inc.*,
  274 F.R.D. 698 (S.D. Ga. 2011)..............................................................................57

*Thorpe v. Walter Inv. Mgmt. Corp.*,
  2016 U.S. Dist. LEXIS 144133 (S.D. Fla. Oct. 14, 2016) ....................................27

*Turnage v. Norfolk S. Corp.*,

No. 05-0509, 2006 U.S. App. LEXIS 11674 (6th Cir. Apr. 28, 2006) ...............52

*Tyco Fire & Sec., LLC v. Alcocer*,
218 Fed. Appx. 860 (11th Cir. 2007) .................................................34

*Univ. of Kan. Ctr. For Research, Inc. v. United States*,
No. 08-2565-JAR, 2009 U.S. Dist. LEXIS 79722 (D. Kan. Sep. 2, 2009)... 26, 30

*Wallace v. VF Jeanswear Ltd. P'ship*,
No. 5:18-cv-2009-AKK, 2020 U.S. Dist. LEXIS 35291 (N.D. Ala. Mar. 2, 2020)
..........................................................................................................60

*Washington v. Vogel*,
158 F.R.D. 689 (M.D.Fla.1994) .........................................................57

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
208 F.3d 288 (1st Cir. 2000) ..............................................................56

*Williams v. Mohawk Indus., Inc.*,
568 F.3d 1350 (11th Cir. 2009) .........................................................50

*Williams v. Southern Bell T&T Co.*,
No. 77-1895, 1978 WL 73 (S.D. Fla. April 4, 1978) ................................. 28, 29

## STATUTES

15 U.S.C. § 77l(a)(1) .........................................................................1

15 U.S.C. § 77z-1(a)(3)(B) ..................................................................5

15 U.S.C. § 78j(b) ..............................................................................1

28 U.S.C. § 1291 ...............................................................................1

28 U.S.C. § 1331 ...............................................................................1

## O1THER AUTHORITIES

Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center,
*Managing Class Action Litigation: A Pocket Guide for Judges* 9 (3d ed. 2010) 22

*In re: Amendments to the Local Rules*,
   Admin Order 2011-11 (S.D. Fla. filed Nov. 29, 2011) ........................................23

**RULES**

17 C.F.R. § 240.10b-5 ................................................................................1

C.D. Cal. L.R. 23-3 .................................................................................22

Fed. R. Civ. P. 23 ........................................................................... passim

Fed. R. Civ. P. 23(c)(1)(A) ............................................................... 21, 52

Fed. R. Civ. P. 83(a)(1) ...........................................................................22

S.D. Fla. Civ.L.R. 7.1(c)(2) ...................................................................12

S.D. Fla. L.R. 15.1 .................................................................................48

S.D. Fla. L.R. 23.1(c) ............................................................................32

# JURISDICTIONAL STATEMENT

Jurisdiction is proper in this case under 28 U.S.C. § 1331, as this appeal arises after a final judgment in a civil action in the United States District Court for the Southern District of Florida ('District Court"), alleging violations of Section 12(a)(1) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77l(a)(1)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10-b5 promulgated thereunder [17 C.F.R. § 240.10b-5]. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. The District Court entered a final judgment by denying defendant Centra Tech Inc.'s ("Centra Tech") Motion for Reconsideration on February 3, 2020. R276. A notice of appeal was timely filed on March 4, 2020. R286.

# STATEMENT OF ISSUES ON APPEAL

1.      Whether the District Court erred in denying Appellants' First Motion for Class Certification as untimely where the Motion was brought before any discovery could be conducted?

2.      Whether the District Court erred in determining the propriety of class certification without allowing an opportunity for class discovery?

3.      Whether the District Court erred in refusing to consider the merits of class certification under Rule 23 when considering Plaintiffs' Renewed Motion for Class Certification?

4.      Whether the District Court abused its discretion in applying the standard of review applicable to a motion for reconsideration to Plaintiffs' Renewed Motion for Class Certification?

## STATEMENT OF THE CASE

## I.      Factual Background

Appellee-Defendant Centra Tech was a start-up company that purported to develop and market the Centra Debit Card which the Company claimed would permit individuals to store and spend their cryptocurrencies, including Bitcoin ("BTC") and Ether ("ETH"), in real time at any vendor that accepted Visa or Mastercard.   R97, Amended Complaint, at ¶5.   To finance its operations and development of the Centra Debit Card and related products, Centra Tech conducted an "initial coin offering" or "ICO" through which the Company offered and sold Centra Tokens ("CTR Tokens") to the general public.   *Id*. at ¶¶ 75–98.[1]

---

[1] An ICO is a capital raising mechanism through which an entity offers investors a digital "coin" or "token" in exchange for consideration—most commonly in the form of established virtual currencies (typically BTC and ETH) or fiat currency.   *Id.*

Between July 23, 2017 and April 20, 2018, Centra Tech raised at least 112,777 ETH and other virtual currency investments including Bitcoin and Litecoin—then valued at approximately **$32 million**—from Plaintiffs and thousands of other similarly situated investors through its offer and sale of CTR securities. R97 at ¶ 115.

In late July 2017, Centra Tech, through its officers and directors, issued a press release "that stated it had created 'the world's first Debit Card that is designed for use with compatibility on 8+ major cryptocurrency blockchain assets'" and that the Centra ICO was a "'truly ground. floor opportunity" and that its Centra Debit Card worked "anywhere that accepted Visa and Mastercard." R97 at ¶¶ 91–2. However, Centra Tech was never authorized to use the Visa or Mastercard networks and the Centra Debit Card never allowed users to make digital currency transactions in "real time." *Id*. at ¶ 98.[2] Centra Tech made these statements to induce Plaintiffs and the general public to invest in more unregistered CTR Token securities and as part of a

---

at ¶ 71. Like investors in an initial public offering ("IPO"), purchasers of these digital tokens are endowed with certain rights related to a venture underlying the ICO, such as profits, shares of assets, use of certain services provided by the issuer, and/or voting rights. *Id.* at ¶ 72.

[2] Centra Tech also fabricated fictional executives who they claimed were working with Centra Tech, touted Centra Tech's nonexistent insurance policy, and made false claims regarding state licenses to increase investor confidence and solicit additional purchases of CTR Tokens. *Id*. at ¶¶ 270–285; 286–291; 292–299.

scheme to artificially inflate the value of the patently worthless unregistered CTR Token securities. *Id*. at ¶ 336.

Plaintiffs each invested in CTR Tokens and sustained financial harm as a result of Defendant Centra Tech's unlawful and fraudulent conduct. R97 at ¶ 33. Thus, Plaintiffs brought this securities class action against Centra Tech, alleging that Centra Tech offered and sold Plaintiffs and the putative class unregistered securities—in the form of digital CTR Tokens—in violation of Section 12(a)(1) of the Securities Act of 1933 and made material misrepresentations concerning the value and functionality of CTR Tokens in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.[3]

## II. <u>Procedural Background</u>

On December 13, 2017, Plaintiff Rensel initiated this case by filing a complaint alleging, on behalf of himself and the other public investors in the Centra ICO, claims for violations of the federal securities laws stemming from Centra

---

[3] On March 31, 2018, criminal charges were filed against two of Centra Founders—Sharma and Farkas. The Government's charges arise from Sharma and Farkas' actions relating to the Centra Tech ICO and include: (1) Conspiracy to Commit Securities Fraud; (2) Securities Fraud; (3) Conspiracy to Commit Wire Fraud; and (4) Wire Fraud. R97-1. Shortly thereafter, on April 20, 2018, criminal charges were also filed against the third Centra Founder—Trapani. *Id*.

Tech's offer and sale of unregistered securities in connection with the Centra ICO R1.

### A. The PSLRA's Automatic Stay on Discovery Barred Plaintiffs From Obtaining Any Discovery Until The Court Ruled On All Motions To Dismiss

Because Plaintiffs asserted claims under the federal securities laws, this Action is governed by the requirements set forth in the Private Securities Litigation Reform Act, as amended (the "PSLRA"), 15 U.S.C. § 77z-1(a)(3)(B). R. 59. The PSLRA contains various procedural requirements, including a lengthy lead plaintiff appointment process. Thus, although this action was initiated on December 13, 2017, the district court did not appoint Plaintiffs Rensel and He as Co-Lead Plaintiffs under the PSLRA until April 11, 2018. R59.

The PSLRA also imposed an automatic stay on discovery in this action until Plaintiffs prevailed at the motion to dismiss stage. R190. Given the PSLRA's bar on discovery, Plaintiffs twice petitioned the district court to allow limited discovery. *See* R23, R54.[4] Shortly thereafter, on February 2, 2018, Centra Tech and its founders filed a motion to compel arbitration or dismiss the initial complaint (the "First MTCA"). R26. Accordingly, absent a grant of Plaintiffs' motion for expedited

---

[4] The District Court did not grant either of Plaintiffs' requests for expedited discovery.

5

discovery or a ruling on the First MTCA, the PSLRA's automatic stay on discovery prevented Plaintiffs from obtaining discovery.

The First MTCA remained pending until the District Court denied that motion on September 25, 2018. R96. However, on that same day, the District Court directed Plaintiffs to file their Amended Complaint by October 9, 2018. Because the Amended Complaint asserted claims against additional defendants that filed motions to dismiss, the PSLRA's automatic stay continued to bar Plaintiffs from seeking discovery. R190.

**B.     The Action is Reassigned and Parties Request A Scheduling Order**

On October 30, 2018, the Honorable Judge King issued an Order of Recusal whereupon the Action was reassigned to Judge Scola. R104. On November 20, 2018, the Court issued its Order Requiring Discovery and Scheduling Conference (the "November 20 Order"). R116. The November 20 Order directed the parties in this Action to "meet and confer regarding discovery and scheduling issues" on or before November 30, 2018, and thereafter submit a "joint-discovery-plan-and-conference report" within fourteen days of such conference. *Id*. Additionally, the District Court directed the parties "to advise the Court whether they would prefer to be assigned to the expedited (Attachment 'A') or to the standard (Attachment 'B') [scheduling] track." *Id*.

On January 16, 2019, the parties filed their Rule 26(f) Report which contained Plaintiffs' request that the District Court issue a scheduling order which would include "additional deadlines to account for briefing and a hearing on Plaintiffs' motion for class certification." R156 at 3.

Had the District Court issued a Scheduling Order adopting the Regular Schedule on the date the Rule 26(f) Report was filed, the deadline for Plaintiffs to file a motion for class certification would have been on or about November 20, 2019. If the District Court had issued a Scheduling Order modeled after the Expedited Schedule, Plaintiffs would have been required to move for class certification Plaintiffs by on or about July 3, 2019.

However, the District Court never entered a Scheduling Order, and thus, there has never been a deadline set for Plaintiffs to file a motion for class certification in this Action.

## C. Plaintiffs' First Motion For Class Certification

### 1. The District Court Orders Plaintiffs To Move For Default Judgment Thus Compelling Plaintiffs to Move for Class Certification Prior to Obtaining Any Pre-Certification Discovery

The ongoing stay of discovery was highlighted by Magistrate Judge Jacqueline Becerra's March 8, 2019 Report and Recommendation on the Stay of

Discovery where she recommended that "discovery be stayed as to all parties until such time as all motions to dismiss have been filed and heard by the Court" because this "would allow the Court the opportunity to rule on all motions to dismiss and proceed with the discovery phase (assuming that one or more of the motions is denied) at once, and not on different tracks." R190. The District Court adopted this Report and Recommendation in full on May 1, 2019. R200.

On May 13, 2019, the District Court issued its Omnibus Order granting certain previously named defendants' motions to dismiss. R202. However, previously named defendant Allan Shutt's Motion to Dismiss remained pending. R199. Accordingly, under the PSLRA and the Discovery R&R, Plaintiffs were still barred from seeking any discovery. Indeed, the stay on discovery was not lifted until June 10, 2019, when Plaintiffs voluntarily dismissed their claims against the remaining individual defendants, as continued litigation against these defendants, "would cause unnecessary delay to the resolution of their claims against Centra Tech" and was "unlikely to yield any additional recovery or benefit to the proposed class." R206, R209–210.

Unfortunately, Plaintiffs remained unable to seek critical discovery from Centra Tech as it was in default.[5] Plaintiffs thus planned to issue subpoenas to Centra Tech, its founders, and various third parties to obtain class discovery prior to seeking class certification. R239 at 17. However, on June 7, 2019, the District Court issued an order directing Plaintiffs to "move for Default Judgment against Centra Tech by **June 20, 2019**, consistent with Federal Rule of Civil Procedure 55(b)." R208 (emphasis in original).

In light of the District Court's June 7 Order, and in order to move for default judgment on behalf of the Class, Plaintiffs were compelled to move for class certification at that time, even though discovery had still not even commenced. Accordingly, on June 13, 2019, Plaintiffs simultaneously filed a motion for default judgment against Centra Tech and a motion for class certification (the "First Motion"). R211–212.

---

[5] As a result of Centra Tech's repeated failure to retain and have counsel enter an appearance on its behalf, on January 30, 2019, Plaintiffs filed a request for a clerk's entry of default against Defendant Centra Tech. R169. On January 31, 2019, a Clerk's Default pursuant to Fed. R. Civ. P. 55(a) was entered against Defendant Centra Tech. R172. On June 15, 2019, Centra Tech filed a Motion to Set Aside the Clerk's Default. R214. The District Court denied this Motion on September 12, 2019. R234.

Plaintiffs' First Motion sought certification of a Class of all persons or entities who purchased or otherwise acquired CTR Tokens during the period from July 23, 2017 through April 28, 2018, inclusive, and were thereby injured. This Class was comprised of three subclasses: all persons and entities who purchased CTR Tokens (1) directly from Centra Tech during its "official" ICO from approximately July 23, 2017 through October 5, 2017, (2) directly from Centra Tech during the remainder of its ICO from approximately October 6, 2017 through April 20, 2018, and (3) on the open market as a result of Centra Tech successfully soliciting their purchase. R212 at 1–2.

The First Motion noted that the identity of members of the Class could be ascertained by records maintained by Centra Tech, including a "spreadsheet labelled 'Centra Token Sale Details' which contained information regarding over 3,500 purchases of Centra Tokens during the Class Period" (the "Centra Spreadsheet") R212 at 14. However, because Plaintiffs had not yet been able to conduct class discovery, they did not have access to this spreadsheet at the time of filing the First Motion.

**2. The District Court Denies Plaintiffs' First Motion for Class Certification**

On September 17, 2019, the District Court denied Plaintiffs' First Motion on the grounds that it was (a) "untimely" and (b) failed to demonstrate that the proposed Class was ascertainable. R235. In particular, the District Court found Plaintiffs' First Motion untimely because it "was filed 18 months after the filing of the initial complaint and six months after the filing of the First Amended Complaint." R235 at 4. The District Court further concluded that the proposed class was not ascertainable because Plaintiffs did "not assert that they have access to [the] spreadsheet" or that they would be able to obtain access to it. *Id.* at 5.

On September 20, 2019, the District Court issued a Paperless Order denying Plaintiffs' original motion for default judgment stating:

> Given the Court's recent order denying the motion for class certification 235, the Court cannot enter a judgment based on class-wide damages. Therefore, the Plaintiffs are directed to file a renewed motion for default judgment that provides damages calculations specific to their individual claims in this case. The Plaintiffs' renewed motion for default judgment is due on October 11, 2019.

R236.

## D. Plaintiffs' Renewed Motion For Class Certification

### 1. Plaintiffs File Their Renewed Motion For Class Certification As Authorized By The District Court

On September 26, 2019, Plaintiffs served eleven subpoenas aimed at obtaining business records that would allow Plaintiffs to identify Class members (i.e.

individuals who purchased CTR Tokens from Centra Tech during the "official" ICO).

Shortly thereafter, on September 27, 2019, Plaintiffs filed a motion for an extension of the page limitation set forth in S.D. Fla. Civ.L.R. 7.1(c)(2) in connection with the anticipated filing of their renewed and amended motion for class certification, which attached Plaintiffs' proposed renewed motion and incorporated memorandum of law as an Exhibit. R237. On October 1, 2019, the District Court granted Plaintiffs' motion to exceed the page limit in their renewed motion for class certification and directed Plaintiffs to file their renewed motion by October 3, 2019. R238. That same day, Plaintiffs filed their renewed motion for class certification supported with additional evidence Plaintiffs were able to obtain subsequent to the filing of the First Motion. R239.

On October 2, 2019, Plaintiffs filed a motion for extension to file their renewed motion for default judgment until such time that the District Court ruled on their Renewed Motion. R240. On October 3, 2019, the District Court granted Plaintiffs' request and ordered that the renewed motion for default judgment would be "due two weeks after the Court's ruling on the Plaintiffs' motion for class certification." R241.

The Renewed Motion sought certification of a Class consisting of a narrower Class consisting of: "All persons or entities who purchased or otherwise acquired CTR Tokens directly from Centra Tech in connection with its "official ICO" from July 23, 2017 through October 5, 2017." (the "Renewed Motion") R239 at 2.

Plaintiffs' Renewed Motion argued that neither the First Motion nor the Renewed Motion were untimely, as the District Court had not issued a scheduling order or set a deadline for Plaintiffs to bring a motion for class certification and that Plaintiffs were precluded from obtaining discovery pursuant to the stay imposed by the PSLRA. R239 at 3–12. Plaintiffs' Renewed Motion also set out a detailed claims process through which members of the Class could be ascertained and explained how Plaintiffs could obtain records identifying Class members. R239 at 17–24.

While Plaintiffs' Renewed Motion was pending, Plaintiffs received a response to one of their subpoenas containing the Centra Spreadsheet which Centra Tech originally produced to the SEC that it stated was to "identify all the investors who purchased any digital tokens issued by Centra Tech, along with (among other things) each investor's contact information, the amount of digital funds each investor provided for the purchase of Centra tokens, the digital wallet addresses identifying the digital wallets used by each investor to purchase Centra tokens, the transaction hash number identifying each purchase, and the digital wallet address identifying the

digital wallets used by Centra Tech to receive digital funds from each investor." R248.

On October 17, 2019, Plaintiffs provided the District Court with notice that they had obtained this information which enabled them to readily identify Class membership and notify many Class members with relative ease. R248. As stated in Plaintiffs' Reply in further support of the Renewed Motion, the Centra Spreadsheet "contains information identifying approximately 90% of the members of the Renewed Motion's proposed Class, if not more." R250 at 8.

### 2. The District Court Denies Plaintiffs' Renewed Motion for Class Certification

On November 20, 2019, the District Court denied Plaintiffs' Renewed Motion, finding that it "does not demonstrate changed circumstances or new evidence to merit the Court's consideration of a renewed motion for class certification." R258 at 2. The District Court held that Plaintiffs' argument that both the First Motion and Renewed Motion were timely "are arguments more appropriate for a motion for reconsideration." *Id*.

The District Court observed that Plaintiffs' Renewed Motion dedicated seven pages to the ascertainability of the Class, but did not substantively consider this

additional argument and evidence, based on its conclusion that "Plaintiffs do not argue that this information was previously unavailable to them." R258 at 2–3.

### E. Plaintiffs Obtain Final Default Judgment On Their Individual Claims And File The Instant Appeal

Following the District Court's denial of Plaintiffs' Renewed Motion, Plaintiffs moved for entry of a default judgment against Centra Tech. R260. And on December 13, 2019, the District Court granted Plaintiffs' Motion for Default Judgment and entered a judgment in favor of each of the individual Plaintiffs and against Centra Tech. R263. Centra Tech subsequently filed a Motion for Reconsideration of Final Default Judgment. R264. On February 4, 2020, the District Court denied Centra Tech's Motion for Reconsideration of Final Default Judgment. R276. This appeal was filed on March 4, 2020. R286.

### STANDARD OF REVIEW

"[A] district court's decisions regarding class **certification** for abuse of discretion. 'A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous.'" *Herrera v. JFK Med. Ctr., Ltd. P'ship*, 648 F. App'x 930, 933 (11th Cir. 2016) (quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1264 (11th Cir. 2009)). "'In addition, 'an abuse of discretion occurs if

the district court imposes some harm, disadvantage, or restriction upon someone that is unnecessarily broad or does not result in any offsetting gain to anyone else or society at large.'" *Glover v. City of Pensacola*, 372 F. App'x 952, 954 (11th Cir. 2010) (quoting *Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1096 (11th Cir.2004)).

## SUMMARY OF ARGUMENT

### I.    <u>First Motion</u>

The District Court denied Plaintiffs' First Motion for Class Certification on two grounds: (1) Plaintiffs' First Motion was purportedly "untimely"; and (2) upon a finding that Plaintiffs were "unable to demonstrate that their proposed classes are ascertainable." R235. In denying Plaintiffs' First Motion for class certification, the District Court abused its discretion by applying the wrong legal standards, following improper procedures, and applying the law in an unreasonable or incorrect manner.

The District Court's conclusion that Plaintiffs' First Motion was untimely constitutes an abuse of discretion because it was inconsistent with the Federal Rules of Civil Procedure and the Southern District of Florida's Local Rules of Civil Procedure. Additionally, in reaching this determination, the District Court improperly disregarded key aspects of the Action's procedural history, such as the impact that the PSLRA's procedural requirements had on the timing of when

16

Plaintiffs could have realistically moved for class certification, and the fact that there was no deadline under which a class certification could have been untimely.

The District Court abused its discretion by disregarding its management responsibilities under Fed. R. Civ. P. 23 ("Rule 23") in concluding that Plaintiffs' were "unable to demonstrate that their proposed classes are ascertainable." R235 at 4. The District Court improperly reached this conclusion without affording Plaintiffs any opportunity to respond to the Court's questions or conduct class discovery. Had the District Court conducted the rigorous analysis of Plaintiffs' First Motion, as required under Rule 23, it would have reached the opposite conclusion. For instance, one of the First Motion's several proposed methods for ascertaining class membership was to review Centra Tech's records of CTR Token purchasers. Despite examples of such records having been entered into the record on several occasions,[6] the District Court found that Plaintiffs had "failed to proffer any evidence that Centra Tech's records would be useful to identify class members."

---

[6] *See, e.g.*, R26-9 (Exhibit 6 to the Declaration of Steve Sykes, Centra Tech's former Chief Technology Officer, which is Centra Tech's "purchaser record" for Plaintiff Rensel); R34-1, the Supplemental Declaration of Mr. Sykes which attaches Centra Tech "customer records" for Plaintiff Rensel and three additional CTR Token investors); R215-9 (copy of Plaintiff Rensel's "purchaser record"); R216-8 (same).

## II.    __Renewed Motion__

The District Court denied Plaintiffs' Renewed Motion for Class Certification by concluding that: "motion does not demonstrate changed circumstances or new evidence to merit the Court's consideration of a renewed motion for class certification." R258.  In denying Plaintiffs' Renewed Motion for class certification, the District Court abused its discretion by applying the wrong legal standards, following improper procedures, and applying the law in an unreasonable or incorrect manner.

In denying the Renewed Motion, the District Court abused its discretion by refusing to consider the Renewed Motion merits of class certification under Rule 23 of the Federal Rules of Civil Procedure.  Renewed motions for class certification are reviewed under the same standard as original motions for class certification— whether they satisfy Rule 23. Despite the foregoing, and the fact that the District Court expressly authorized Plaintiffs to file the Renewed Motion, the District Court refused to even consider the Renewed Motion under Rule 23.  The District Court reasoned that it was not convinced Plaintiffs should get a "second bite at the class certification apple."  R258 at 3.  The approach adopted by the District Court deprived Plaintiffs of the opportunity to address the District Court's concerns and is in direct

conflict with Eleventh Circuit precedent, as well as the Federal Rules governing class actions and thus, an abuse of discretion.

Not only did the District Court refuse to conduct the rigorous analysis required under Rule 23, but it applied the wrong legal standard of review—the standard applicable to a motion for reconsideration. The Renewed Motion fully addressed the District Court's prior bases for denying class certification, proposed a narrowed and amended class definition, and was supported by newly obtained evidence. In this case, clarified circumstances support the filing of a Renewed Motion—such as learning that the District Court believed the First Motion untimely (and clarifying why it was not), narrowing the class definition, elaborating on methods used to ascertain the class, and submitting newly obtained evidence. Treating Plaintiffs' Renewed Motion as a motion for reconsideration thus constitutes an abuse of discretion.

## ARGUMENT

### I.     The District Court Abused Its Discretion in Denying Plaintiffs' First Motion for Class Certification

#### A.     The District Court Erred In Finding Plaintiffs' First Motion Untimely

Plaintiffs' First Motion was timely, and the District Court incorrectly determined otherwise. The District Court provided no valid basis for its timeliness

determination. Rather, the District Court's determination that the First Motion was untimely was premised on the notion that: (1) regardless of the procedural history of the action, there was undue delay in filing the First Motion because "the Plaintiff's [sic] motion for class certification was filed 18 months after filing of the initial complaint"; (2) obsolete local rules from other districts were instructive in finding the First Motion untimely; and (3) the fact that there was no deadline under which the First Motion could have been construed as untimely was apparently irrelevant. R235.

## 1. The District Court's Timeliness Determination Is In Direct Conflict With Federal and Local Rules

The First Order begins the timeliness discussion by correctly noting that "Federal Rule of Civil Procedure 23(c)(1)(A) requires that a class be certified '[a]t an early practicable time after a person sues or is sued as a class representative.'" R235 at 3. Rather than rely upon the overabundance of authority detailing the flexibility that Rule 23 enables with respect to the timing of class certification, the district court framed its timeliness discussion by stating:

> Although the Southern District does not have a corresponding local rule, the Middle and Northern Districts of Florida require that a motion for class certification be filed within 90 days of the filing of the complaint. M.D. Fla. R. 4.04(b); N.D. Fla. R. 23.1

R235.

The District Court's reliance on the Middle and Northern District's local rules to frame its timeliness discussion was improper and unreasonable. Prior to 2003, Rule 23(c)(1)(A) [Fed. R. Civ. P. 23(c)(1)(A)] required that a determination on class certification be made "*as soon as practicable* after commencement of an action." Fed. R. Civ. P. 23 advisory committee's note of 2003. In 2003 Rule 23 was amended to require a determination on class certification "at an early practicable time after a person sues or is sued as a class representative." *Id.* As explained by the Supreme Court in *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018), this "alteration was made to allow greater leeway, more time for class discovery, and additional time to 'explore designation of class counsel' and consider 'additional [class counsel] applications rather than deny class certification,' thus 'afford[ing] the best possible representation for the class.'" 138 S. Ct. at 1807 (citing Advisory Committee's 2003 Note on subds. (c)(1)(A) and (g)(2)(A) of Fed. Rule Civ. Proc. 23, 2.).

Indeed, a 90-day filing deadline for a class certification motion has been found to conflict with the flexibility afforded by the 2003 amendment to the Federal Rules, and is therefore not a guide to such a motion's timeliness. *See Abs Entm't v. CBS Corp.*, 908 F.3d 405, 427 (9th Cir. 2018). In *Abs Entm't v. CBS Corp.*, the Ninth Circuit held that a 90-day deadline for the filing of a class certification motion

contained in the Central District of California's local rules was "in direct contrast to the flexibility of the Federal Rule, which calls for a determination on class certification '[a]t an early practicable time after a person sues or is sued as a class representative.'" *Id.* (quoting Fed. R. Civ. P. 23(c)(1)). Accordingly, in considering Rule 23(c)(1), the Ninth Circuit opined that "'you should feel free to ignore local rules calling for specific time limits; such local rules appear to be inconsistent with the federal rules and, as such, obsolete.'" *Id.* (quoting Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges* 9 (3d ed. 2010)). The Ninth Circuit concluded that C.D. Cal. L.R. 23-3's 90-day class certification filing requirement was incompatible with the Federal Rules of Civil Procedure and thus, in light of Fed. R. Civ. P. 83(a)(1)'s mandate that local rules "cannot be incompatible with Federal Rules," could not be used to deny class certification as untimely. *Abs Entm't*, 908 F.3d at 427.

In short, local rules that require a motion for class certification be filed within 90-days, such as those contained in the local rules of the Middle and Northern Districts of Florida, are obsolete as they are inconsistent with current federal rules. In fact, this is the very reason that the Southern District of Florida no longer has a corresponding 90-day filing deadline. Prior to 2004, like the Middle and Northern Districts of Florida, the Southern District's local rules also included a 90-day class

certification filing requirement. See *In re: Amendments to the Local Rules*, Admin

Order 2011-11, at pg. 54 (S.D. Fla. filed Nov. 29, 2011). However, that requirement

was intentionally removed "to conform to the December 2003 amendment made to

[Rule] 23(c)(1)(A)." *Id.*

In short, it was unreasonable, and an abuse of discretion, for the District Court

to rely upon the Middle and Northern District of Florida's obsolete 90-day filing

requirements as instructive to reaching its timeliness determination in a case pending

within the Southern District of Florida, which has no such rule.

### 2. The District Court Abused Its Discretion Finding the First Motion Untimely Despite Failing to Enter a Scheduling Order

The District Court's brief discussion as to timeliness in the First Order

acknowledged that "Courts often include a class certification deadline in their

scheduling orders to avoid an untimely or late-filed motion for class certification."

R235 at 3 (citing *Bianchi v. Dynamic Recovery Solutions*, No. 13-61997, 2015 WL

12711584, at *1 (S.D. Fla. April 28, 2015)). Despite the Federal Rules mandating

that the District Court enter a scheduling order,[7] it never entered any such order the

---

[7] "Federal Rule of Civil Procedure 16(b)(1)–(2) requires the district court to issue a scheduling order—unless exempted by a local rule—'as soon as practicable, but unless the judge finds good cause for delay, the judge must issue it within the earlier

Action. Accordingly, there was no District Court ordered deadline for a class certification motion.[8]

On November 20, 2018, the District Court issued its Order Requiring Discovery and Scheduling Conference. R116. The November 20 Order directed the parties in the Action to "meet and confer regarding discovery and scheduling issues" on or before November 30, 2018, and thereafter submit a Rule 26(f) report which would, *inter alia*, "advise the Court whether they would prefer to be assigned to the expedited (Attachment 'A') or to the standard (Attachment 'B') [scheduling] track." *Id.*[9]

On January 16, 2019, the parties' Rule 26(f) Report was filed, which contained Plaintiffs' request that the District Court assign the case to a scheduling

_____

of 90 days after any defendant has been served with the complaint or 60 days after any defendant has appeared.'" *DeBose v. Ellucian Co., L.P.*, No. 19-11701, 2019 WL 7288758, at *4 (11th Cir. Dec. 30, 2019).

[8] *See, e.g.*, *Mey v. Enter. Fin. Grp., Inc.*, No. 215CV463FTM99MRM, 2016 WL 7364537, at *2 (M.D. Fla. Dec. 19, 2016) ("The Court agrees that the deadline to file a renewed Motion for Class Certification has not yet passed and there is otherwise no schedule entered as of this date. . . . The issue of scheduling was previously referred to the Magistrate Judge (Doc. #45), and the Court understands that the parties have been directed to submit an Amended Joint Case Management Report to include deadlines for class certification briefing (Doc. #82).").

[9] Attachment A to the November 20 Order contained an example of Scheduling for "Expedited Track Cases" (the "Expedited Schedule"). Attachment B to that Order contained an example of Scheduling for "Regular Track Cases" (the "Regular Schedule").

track akin to the Regular Schedule in "Attachment B" but requested that such schedule include "additional deadlines to account for briefing and a hearing on Plaintiffs' motion for class certification." R156 at 3.

Had the District Court issued a Scheduling Order adopting the Regular Schedule on the date the Rule 26(f) Report was filed, the deadline for Plaintiffs to file a motion for class certification would have been on or about November 20, 2019. If the District Court had issued a Scheduling Order modeled after the Expedited Schedule, Plaintiffs would have been required to move for class certification Plaintiffs by on or about July 3, 2019. The First Motion was filed on June 13, 2018 and thus would have been timely under either scenario. Indeed, the First Motion would have even been timely under the alternative schedule counsel for certain previously-named Defendants proposed in the 26(f) Report ("Defendants' Proposed Schedule"). R156 at 5–6.. Under Defendants' Proposed Schedule, "June 14, 2019" would have been set as the "Deadline [for Plaintiffs] to file motion for class certification." *Id*.

A motion for class certification cannot be untimely where there is no deadline and it is filed early in the procedural history of a case, regardless of the passage of calendar time. *See, e.g., Jefferson v. Best Buy Co.*, No. 2:08cv121-WKW, 2010 U.S. Dist. LEXIS 47058, at *12 (M.D. Ala. Mar. 18, 2010) (motion for leave to amend

timely because "no scheduling order was entered in th[e] case" and thus, there was "no deadline in effect for amending the pleadings").[10]

In sum, the District Court never entered a scheduling order and thus, there has never been a deadline set for Plaintiffs to file a motion for class certification.[11] Plaintiffs' First Motion was timely under the Federal and Local Rules, and Plaintiffs were not instructed to file a motion for class certification under any Scheduling Order or other court-ordered deadline. Given that there is no deadline, actual or

---

[10] *See also Schmidt v. Red Rock Fin. Servs., LLC*, No. 2:12-CV-1773 JCM PAL, 2013 WL 1501481, at *3 (D. Nev. Apr. 10, 2013) ("[T]the court did not set any deadline for the class certification motion and discovery has not concluded. Therefore, because no deadline has been imposed and discovery has not concluded the court, at this time, cannot rule any motion for class certification untimely.").

[11] *See, e.g., Hurley v. United States Healthworks Med. Grp. of Wash., P.S.*, No. CV-05-0017-EFS, 2006 U.S. Dist. LEXIS 44062, at *14–15 (E.D. Wash. June 27, 2006) ("In light of Rule 23(c)(1)(A)'s vague requirement that certification issues be addressed 'at an early practicable time' and the lack of authority requiring motions for class certification be filed by any certain time, the Court finds Plaintiffs' motion is timely"); *Jefferson*, 2010 U.S. Dist. LEXIS 47058, at *12 (finding plaintiff's motion for leave to amend timely because "no scheduling order was entered in th[e] case" and thus, there was "no deadline in effect for amending the pleadings"); *Badger Auctioneers, Inc. v. Ali*, No. 6:16-cv-572-Orl-31TBS, 2017 U.S. Dist. LEXIS 8857, at *7 (M.D. Fla. Jan. 10, 2017) (agreeing that "there [wa]s no scheduling order entered on the docket, which means that there [we]re no litigation dates that Plaintiff [w]as . . . unable to meet") (internal quotation marks and citation omitted); *Univ. of Kan. Ctr. For Research, Inc. v. United States*, No. 08-2565-JAR, 2009 U.S. Dist. LEXIS 79722, at *8 (D. Kan. Sep. 2, 2009) ("The Court easily concludes that the motion is timely. No scheduling order has been entered in this matter; therefore, no deadlines have been imposed for discovery or otherwise.").

hypothetical, under which the First Motion could have been untimely, the district court's timeliness determination was clearly erroneous.

### 3. The District Court Abused Its Discretion By Applying the Incorrect Legal Standard in Its Timeliness Determination

In the First Order, the District Court lacked any valid basis for its determination that there had been "undue delay" in moving for class certification. The District Court failed to identify any actions in the record taken by Plaintiffs which could conceivably constitute undue delay. Rather, the District Court merely stated:

> Here, the Plaintiff's motion for class certification was filed 18 months after the filing of the initial complaint and six months after the filing of the First Amended Complaint. (ECF No. 212.) The Plaintiffs' motion offers no excuse or justification for this delay.

R235 at 4.

The District Court's entire analysis relied on the false premise that the filing of a motion for class certification "18 months" after the initial complaint was filed constituted undue delay,[12] and citations to two inapposite cases: (1) *Williams v.*

---

[12] The District Court's determination that the filing of a motion for class certification "18 months" after the initial complaint was filed would constitute undue delay does not account for the fact that class actions typically require, at minimum, well over one year of litigation before a motion for class certification is filed. *See, e.g., Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 U.S. Dist. LEXIS 144133 (S.D. Fla. Oct. 14, 2016) (15 months between initial complaint and motion for class certification being filed);

*Southern Bell T&T Co.*, No. 77-1895, 1978 WL 73, at *2 (S.D. Fla. April 4, 1978);

and (2) *Porter v. Collecto Inc.*, No. 14-21270, 2015 U.S. Dist. LEXIS 151379 (S.D.

Fla. Nov. 2, 2015). Neither case provides any support for the District Court's

decision.

First, the District Court cited *Williams* for the following statement: "And

'numerous other courts have held that when a plaintiff has failed to move for class

certification in a timely manner . . . such a plaintiff has failed to satisfy the mandate

of Rule 23(a)(4) of fairly and adequately representing the interests of the putative

class.'" R235 at 3-4. The language the District Court omitted from this quotation

---

*Saade v. Insel*, No. 17-22003-Civ-WILLIAMS/TORRES, 2019 U.S. Dist. LEXIS 59189 (S.D. Fla. Apr. 4, 2019) (17 months); *Kron*, 328 F.R.D. 694 (23 months); *Snyder v. iCard Gift Card*, LLC, 0:15-CV-61718 (S.D. Fla. 2015) (26 months); *Wein, et al v. Unicapital, et al*, 1:00cv2054 (S.D. Fla. 2000) (16 months); *Garcia v. Clarins USA, Inc*. et al, 1:14-CV-21249 (S.D. Fla. 2014) (22 months); *Inetianbor v. Cashcall*, Inc. et al, 0:13-CV- 60066 (S.D. Fla. 2013) (40 months); *Dance v. Levitt Corp*. et al, 0:08-CV-60111 (S.D. Fla. 2008) (32 months); *Cifuentes et al v. Regions Bank*, 1:11-CV-23455 (S.D. Fla. 2011) (26 months); *Waterford Township General Employees Retirement System v. Bankunited Financial Corporation et al*, 1:08-CV-22572 (S.D. Fla. 2008) (24 months); C*abot East Broward 2 LLC et al v. Cabot et al*, 0:16CV61218 (S.D. Fla. 2016) (19 months). Indeed, the median "Time from First Complaint Filing to Class Certification Decision" in federal securities class actions filed from January 2000 through December 2018 was 2.5 years. *See* https://www.nera.com/content/dam/nera/publications/2019/PUB_Year_End_Trend s_012819_Fin al.pdf.

makes clear that the *Williams* decision does not support its timeliness determination.

The full quotation from *Williams* reads as follows: "

> "numerous other courts have held that when a plaintiff has failed to move for class certification in a timely manner, **i.e. in compliance with a local rule governing such matters or a court order**, such a plaintiff has failed to satisfy the mandate of Rule 23(a)(4) of fairly and adequately representing the interests of the putative class."

1978 WL 73, at *2.

Plainly, under the *Williams* court's criteria for determination on whether a motion for class certification is "timely", Plaintiffs' First Motion was filed in a timely manner as it was made in full compliance with all applicable rules and orders. *See, e.g., Hurley*, 2006 U.S. Dist. LEXIS 44062, at *14–15 ("In light of Rule 23(c)(1)(A)'s vague requirement that certification issues be addressed 'at an early practicable time' and the lack of authority requiring motions for class certification be filed by any certain time, the Court finds Plaintiffs' motion is timely"); *Jefferson*, 2010 U.S. Dist. LEXIS 47058, at *12 (finding plaintiff's motion for leave to amend timely because "no scheduling order was entered in th[e] case" and thus, there was "no deadline in effect for amending the pleadings"); *Badger*, 2017 U.S. Dist. LEXIS 8857, at *7 (agreeing that "there [wa]sno scheduling order entered on the docket, which means that there [we]re no litigation dates that Plaintiff [w]as . . . unable to meet") (internal quotation marks and citation omitted); *Univ. of Kan. Ctr. for*

*Research, Inc.*, 2009 U.S. Dist. LEXIS 79722, at *8 ("The Court easily concludes that the motion is timely. No scheduling order has been entered in this matter; therefore, no deadlines have been imposed for discovery or otherwise.").

The District Court's citation to *Porter* is likewise misplaced. In *Porter*, the court denied a "motion for class certification as untimely when filed 18 months after complaint and less than two months before trial." No. 14-21270, 2015 U.S. Dist. LEXIS 151379. The procedural posture and facts before the *Porter* court are in no way analogous to those surrounding Plaintiffs' First Motion. In *Porter*: (i) the plaintiffs' claims were brought under the Fair Debt Collection Practices Act and thus, not governed under the PSLRA; (ii) the Court had previously issued a Scheduling Order setting September 2, 2015 as the "deadline for the filing of pretrial motions" and November 2, 2015 as the commencement of the trial; and (iii) the plaintiffs' motion for class certification was filed on September 16, 2015 and thus, failed to comply with a court-ordered deadline and was thus genuinely untimely. *Id*. Here, unlike in *Porter*, Plaintiffs had not even obtained initial discovery, let alone approached a trial date. Moreover, unlike in *Porter*, Plaintiffs' claims are governed under the PSLRA's procedural requirements, the District Court never issued a Scheduling Order, and Plaintiffs were not instructed to file a motion for class certification under any Scheduling Order or other court-ordered deadline.

30

**4.** **The District Court Abused Its Discretion By Failing to Adequately Review and Consider the Record In Reaching Its Erroneous Determination That the First Motion Was Untimely**

Even a cursory review of the record would reveal that the Action had been hotly litigated since its initiation on December 13, 2017, and that under prevailing law and the circumstances of this case, Plaintiffs could not have reasonably filed their First Motion at an earlier date. Class certification is a complex determination requiring consideration of numerous factors. Class certification therefore generally requires significant discovery before it can be properly considered, and such class certification motions are rarely filed before motions to dismiss have been adjudicated and substantial discovery has been undertaken. *See, e.g., Herrera*, 648 F. App'x at 935 ("[T]he court should permit limited discovery relevant to the certification issue and then determine whether to hold an evidentiary hearing."); *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008) ("[T]he district court's class certification ruling was premature under the particular circumstances of this case. . . . precedent also counsels that the parties' pleadings alone are often not sufficient to establish whether class certification is proper, and the district court will need to go beyond the pleadings and permit some discovery and/or an evidentiary

hearing to determine whether a class may be certified.") (citing *Gen. Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147, 160 (1982)).[13]

Indeed, both Fed. R. Civ. P. 23 and the Southern District of Florida's Local Rules evidence that filing for class certification would be premature without discovery. *See* S.D. FLA. L.R. 23.1(c) ("In ruling on any motion by a putative class action plaintiff for a determination under [Rule] 23(c)(1) as to whether an action is to be maintained as a class action, the Court may . . . order postponement of the determination pending discovery . . . ."); *see also Perez v. Safelite Grp. Inc.*, 553 F. App'x 667, 668 (9th Cir. 2014), *as amended on denial of reh'g and reh'g en banc* (Mar. 7, 2014) ("The district court denied the class certification motion because there was insufficient evidence to establish the job duties performed by class members other than Perez. The district court did not address the need for precertification discovery [constituting an abuse of discretion].").

Because Plaintiffs' claims were brought under the federal securities laws, the Action was governed by the PSLRA, which imposes an automatic stay on discovery

---

[13] *See also Gustin v. Hoffman*, No. 6:08-cv-57-Orl-31DAB, 2008 U.S. Dist. LEXIS 116724, at *7-8 (M.D. Fla. Oct. 28, 2008) (denying class certification as "clearly premature" and citing "serious concerns regarding the lack of pre-certification discovery"); *Abs Entm't*, 908 F.3d at 427 ("'The propriety of a class action cannot be determined in some cases without discovery'") (quoting *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210 (9th Cir.1975)).

"until after Plaintiffs prevail at the motion to dismiss stage." *In re Sportsline.com Secs. Litig.*, 366 F. Supp. 2d 1159, 1174 (S.D. Fla. 2004). This discovery stay severely impeded Plaintiffs' ability to seek class certification, as discovery is generally a necessary component to any class certification motion. *See e.g., In re Nat'l Austl. Bank Sec. Litig.*, 2006 U.S. Dist. LEXIS 94163, at *9 (S.D.N.Y. Nov. 8, 2006) (due to the PSLRA's procedural requirements, "Plaintiffs were not in a position to move for class certification because Defendants moved to dismiss the Complaint in lieu of filing an answer, and because discovery was stayed . . . it would have been premature to move for class certification under these circumstances").

Indeed, various districts courts in this Circuit have delayed ruling on class certification where plaintiffs had not been able to obtain discovery so that plaintiffs could obtain class certification discovery prior to moving. *See, e.g., Randy Rosenberg, D.C., P.A. v. GEICO Gen. Ins. Co.*, No. 19-CV-61422, 2019 WL 6828150, at *10 (S.D. Fla. Dec. 13, 2019) ("Plaintiff is entitled to move for class certification, after having had the opportunity to fully develop the "shape and form" of the proposed class through the discovery process.") (citing *Martorella v. Deutsche Bank Nat. Tr. Co.*, 931 F. Supp. 2d 1218, 1228 (S.D. Fla. 2013)); *Daniel v. Navient Sols., LLC*, 328 F. Supp. 3d 1319, 1322–23 (M.D. Fla. 2018) ("An order

on class certification is premature prior to discovery and the parties having an opportunity to thoroughly brief the Rule 23 requirements.") (collecting cases).[14]

It was not until June 10, 2019, that the PSLRA discovery stay had finally been lifted. *See* R 190, 200. Unfortunately, even then Plaintiffs were still unable to seek critical discovery from Centra Tech, as it was in default.[15] Plaintiffs thus anticipated issuing subpoenas to Centra Tech, its founders, and various third parties to obtain class discovery prior to seeking class certification. However, on June 7, 2019, the district court issued an order directing Plaintiffs to "move for Default Judgment against Centra Tech by **June 20, 2019**, consistent with Federal Rule of Civil Procedure 55(b)." R208 (emphasis in original). To ensure compliance with the district court's June 7 Order, and in order to move for default judgment on behalf of the Class, Plaintiffs were compelled to move for class certification at that time, even though discovery had still not even commenced. Accordingly, on June 13, 2019,

---

[14] *See also Gross v. Medaphis Corp.*, 977 F. Supp. 1463, 1475 (N.D. Ga. 1997) ("Class discovery was stayed [under the PSLRA] until the Court ruled on Defendants' Motion to Dismiss . . . Since there has been no class discovery, the Court DENIES as premature Plaintiffs' Motion for Class Certification without prejudice to Plaintiffs' refiling the Motion after the class discovery."); Gustin, 2008 U.S. Dist. LEXIS 116724, at *7–8 (denying class certification as "clearly premature" and citing "serious concerns regarding the lack of pre-certification discovery").

[15] "[E]ntry of a default against a defendant, unless set aside pursuant to Rule 55(c), severely limits the defendant's ability to" participate in the action. *Tyco Fire & Sec., LLC v. Alcocer*, 218 Fed. Appx. 860 (11th Cir. 2007).

Plaintiffs simultaneously filed a motion for default judgment against Centra Tech and a motion for class certification (the "First Motion"). R212.

At no point during the pendency of the Action were Plaintiffs or their counsel sitting idly by. Had the District Court conducted a genuine review of the record, it would have concluded that Plaintiffs had been diligent in litigating the Action on behalf of the putative class throughout its entire pendency. *Id.*[16] Despite the

---

[16] For example, the following are some of Plaintiffs' substantive filings during the Action's pendency: *Ex Parte* Application for Emergency Asset Freeze (ECF No. 4) ("TRO"); Motion for Expedited Discovery (ECF No. 23); Reply Papers on same (ECF No. 28); Opposition to Defendant's Motion to Strike (ECF No. 30); Motion to Strike Defendant's Reply on its Motion to Strike (ECF No. 37); Reply Papers on same (ECF No. 49); Opposition to Defendant's First MTCA (ECF No. 31); Sur-reply on same (ECF No. 64); Motion to Strike Defendant's Reply on the First MTCA (ECF No. 37); Reply Papers on same (ECF No. 50); Motions for appointment as lead plaintiff (ECF Nos. 39, 41); Motion for Lead Plaintiff Discovery (ECF No. 44); Joint Motion for appointment as co-lead plaintiff (ECF No. 46); Renewed Application for Emergency Asset Freeze (ECF No. 54); Reply Papers on same (ECF No. 65); Motion for Leave to Amend attaching proposed Amended Complaint (ECF No. 73); Reply Papers on same (ECF No. 92); Opposition to first defense counsel's motion to withdraw (ECF No. 75); Objections to Report & Recommendation on the First MTCA (ECF No. 84); Opposition to Defendant's Emergency Motion to Modify Asset Freeze (ECF No. 85); Response to Defendant's Objections to R&R on First MTCA (ECF No. 88); Objections to Report & Recommendation on Renewed TRO (ECF No. 90); Amended Complaint (ECF No. 97); Opposition to second defense counsel's motion to withdraw (ECF No. 105); Motion for Alternative Service (ECF No. 153); Opposition to Mayweather Motion to Dismiss (ECF No. 161); Opposition to Khaled Motion to Dismiss (ECF No. 162); Opposition to Sykes Motion to Dismiss (ECF No. 162); Opposition to Stanley Motion to Dismiss (ECF No. 168); Motions for Clerk's Default (ECF Nos.169–171); Opposition to Extension to Obtain Records

foregoing, the First Order asserts, absent any explanation, that "the Plaintiffs' delay appears to be a deliberate decision to file the motion when it would be unopposed by a defaulting defendant." R235 at 4. This is untrue. As explained in detail above, Plaintiffs' decision not to move for class certification earlier was due to their inability to obtain discovery due to the PSLRA's automatic stay and Defendant Centra Tech's status as a defaulting defendant, as well as their reasonable expectation that they would be afforded a reasonable opportunity for discovery under the scheduling order requested in the parties' Rule 26(f) Report, or at minimum, as contemplated in the Discovery Stay R&R adopted by the District Court. Second, Plaintiffs could not have predicted that each of the founder defendants would have been arrested and Centra Tech would have defaulted. For the District Court to suggest otherwise is unsupported by the record. Finally, Centra

_____

(ECF No. 184); Opposition to Motion to Set Aside Default (ECF No. 196); Opposition to Shutt Motion to Dismiss (ECF No. 201); Motion for Default Judgment (ECF No. 211); Motion for Class Certification (ECF No. 212), Reply Papers on same (ECF No. 218); Opposition to Renewed MTCA (ECF No. 219); Motion for Sanctions (ECF No. 222), Reply Papers on same (ECF No. 229); Motion to Strike Defendant's Reply on Renewed MTCA (ECF No. 223); Reply Papers on same (ECF No. 228); Motion for 1927 Sanctions (ECF No. 230); Second Motion for Rule 11 Sanctions (ECF No. 232); the Renewed Motion (R239); Reply on Second Motion for Rule 11 Sanctions (ECF No. 251); Motion to Strike (ECF No. 252); Response to Defendant's Motion to Quash (ECF No. 253); Renewed Motion for Default Judgment (ECF No. 260); and Opposition to Motion for Reconsideration of Final Default Judgement (ECF No. 265).

Tech fell into default in January 2019. Thus, if Plaintiffs had, as the District Court found, made a "deliberate decision" to delay filing a motion for class certification until it would be unopposed by a defaulting defendant, then they would have dismissed all other defendants in January. They did not. As the record reflects, Plaintiffs continued to expend significant resources to litigating all claims against every defendant until the District Court's May 13, 2019 Omnibus Order granted certain defendants' motions to dismiss R202. Only then did Plaintiffs voluntarily dismiss their claims against the remaining individual defendants, as continued litigation against these defendants, even if successful, "would cause unnecessary delay to the resolution of their claims against Centra Tech" and was "unlikely to yield any additional recovery or benefit to the proposed class." R206; R210.

*       *       *

In light of the foregoing chain of events and the applicable law, Plaintiffs submit that they were timely in seeking class certification, and that the District Court abused its discretion in finding Plaintiffs' First Motion untimely. *See Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1093 (9th Cir. 2011) ("Here, the district court held that Pitts was untimely in seeking class certification because he failed to file his motion to certify prior to the initial discovery deadline. With respect, we think the district court committed a clear error of judgment. . . . Without a clear statement from the

district court setting a deadline for the filing of a motion for class certification, Pitts could not predict that he was expected to file his motion by the end of the initial discovery deadline . . . the district court abused its discretion in finding that Pitts could no longer file a timely motion to certify a class."); *Perez*, 553 F. App'x at 668 ("The district court's denial of Perez's extension of time requests as well as its failure to set an initial scheduling conference effectively denied Perez the opportunity to engage in precertification discovery, which constitutes an abuse of discretion."); *Acticon AG v. China N. E. Petroleum Holdings Ltd.*, 687 F. App'x 10, 12–13 (2d Cir. 2017) ("A motion for class certification should "be denied [as untimely] only when the late timing of the determination may cause prejudice or unduly complicate the case.") (citations omitted).

    **B.**    **The District Court Abused Its Discretion When It Determined That Plaintiffs Were Unable to Demonstrate That Their Proposed Classes Were Ascertainable**

Plaintiffs' First Motion sought certification on behalf of a class consisting of:

All persons or entities who purchased or otherwise acquired Centra Tech Tokens ("CTR Tokens") during the period from July 23, 2017 through April 20, 2018, inclusive (the "Class Period"), and were injured thereby.

The Initial Proposed Class consisted of three subclasses:

(1)    All persons and entities who purchased CTR Tokens directly from Defendant Centra Tech during Centra Tech's "official"

initial coin offering from approximately July 23, 2017 through October 5, 2017;

(2)    All persons and entities who purchased CTR Tokens directly from Defendant Centra Tech during the remainder of Centra Tech's initial coin offering from approximately October 6, 2017 through April 20, 2018; and

(3)    All persons and entities who purchased CTR Tokens on the open market as a result of Defendant Centra Tech successfully soliciting their purchases of CTR Tokens.

R212 at 1–2.

When, as here, a plaintiff seeks class certification under Rule 23(b)(3), he or she must show that the proposed class "members can be ascertained by reference to objective criteria and the analysis of the criteria is administratively feasible, *i.e.*, the procedure must be a 'manageable process that does not require much, if any, individual inquiry.'" *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014). It is important to note, however, that "'[c]lass members ***need not be identified at certification; instead, the ascertainability element only requires that class members be identifiable at some point*** in the proceeding." *Saade*, 2019 U.S. Dist. LEXIS 59189, at *13 (emphasis added and internal citation omitted); *see also Reyes v. BCA Fin. Servs., Inc.*, 2018 U.S. Dist. LEXIS 106449, at *13 (S.D. Fla. June 26, 2018) ("As one court in this district put it: 'when considering whether Plaintiff has satisfied the implicit, threshold requirements of ascertainability under

39

Rule 23, the Court ***only considers whether class members can be identified at all***, at least in any administratively feasible (or manageable) way.'") (quoting *Miller v. Wells Fargo Bank*, N.A., No. 1:16-CV-21145-UU, 2017 U.S. Dist. LEXIS 24572, at *4 (S.D. Fla. Feb. 22, 2017)) (emphasis added)).

The First Motion included several proposed methods for ascertaining class membership, including through a review of "records maintained by Defendants and/or virtual currency exchanges" and noted that members of the Class "may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions." R212 at 13-14. Additionally, the First Motion argued that class membership could be easily ascertained by "identification of [the class member's] holdings in CTR Tokens." *Id.*

In its First Order, the District Court denied certification outright upon a finding that: "Plaintiffs are unable to demonstrate that their proposed classes are ascertainable." R235 at 4. With respect to Plaintiffs' argument that class membership could be ascertained through a review of Defendant Centra Tech's records, the district unreasonably found: "the Plaintiffs have failed to proffer any evidence that Centra Tech's records would be useful to identify class members." R235 at 5.

As a preliminary matter, several examples of Centra Tech's business records had been introduced into the record in connection with Centra Tech's numerous failed attempts to compel plaintiffs to arbitration.[17] Each of these records contain detailed information clearly "useful to identify class members"—such as their first and last name, home address, telephone number, email address, online wallet ID, transaction IDs for their investments, investment amounts, and dates and times of their investments.

Moreover, the First Motion explicitly described an example of one such business record maintained by Defendant Centra Tech in detail. Specifically, it referenced the Centra Spreadsheet that Centra Tech had created and produced to federal prosecutors. R212 at 12-13. In the related criminal complaint, which was attached to Plaintiffs' amended complaint (R97-2), the government described the Centra Spreadsheet as containing detailed investor information covering over 3,500 purchases of Centra Tokens during the Class Period. R97-2 at 25 ¶32.a–c. Nevertheless, the District Court disregarded the utility of the Centra Spreadsheet

---

[17] *See, e.g.*, R26-9 (Exhibit 6 to the Declaration of Steve Sykes, Centra Tech's former Chief Technology Officer, which is Centra Tech's "purchaser record" for Plaintiff Rensel); R34-1, the Supplemental Declaration of Mr. Sykes which attaches Centra Tech "customer records" for Plaintiff Rensel and three additional CTR Token investors); R215-9 (copy of Plaintiff Rensel's "purchaser record"); R216-8 (same).

based on an erroneous assumption that the federal prosecutors had the only copy of this spreadsheet, and determined that "[t]he Plaintiffs do not assert that they have access to this spreadsheet or that the government would share this spreadsheet, especially during the pendency of a criminal case." R235 at 5. However, there were numerous routes to obtain the Centra Spreadsheet, including from Centra Tech, former Centra Tech executives, or one of Centra Tech's numerous former defense counsel. Indeed, detailed *infra*, Plaintiffs did, in fact, ultimately obtain the Centra Spreadsheet. *See* R248.

With respect to Plaintiffs' proposed method of ascertaining class membership through a review of records maintained by "cryptocurrency exchanges" or reference to the individual CTR Tokens held by the proposed class member, the District Court discounted these mechanisms to ascertain the putative class by stating:

> The Plaintiffs do not explain how currency exchanges would help identify potential class members. The world of cryptocurrency and currency exchanges is a highly technical area and the Plaintiffs would need to explain to the Court how currency exchanges work, what information is stored, and how the Plaintiffs would access this information to identify potential class members.

R235 at 5.

As noted, the Action had been actively litigated since its initiation on December 13, 2017. Since then, Plaintiffs, as well as certain defendants, had filed

dozens of briefs and declarations for the District Court's review which contained detailed discussions of how blockchains, cryptocurrencies, and cryptocurrency exchanges operate.[18] Operating under the mistaken belief that the District Court would be familiar with their claims or, at minimum, provide Plaintiffs with the opportunity to respond to and address its concerns, Plaintiffs did not include lengthy analyses of the technologies underlying the Action's claims in the First Motion. Additionally, to ensure compliance with page limitations, Plaintiffs' First Motion could not include such discussions without giving short shrift to the required Rule 23 analyses. Indeed, the District Court's Second Order criticized the First Motion's discussion on ascertainability as having been too short in comparison to the Renewed Motion's. R258 at 2–3.

"'[W]ith great power comes great responsibility; the awesome power of a district court [to certify a class action] must be 'exercised within the framework of rule 23.'" *Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016) (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1251 (11th

---

[18] For instance, in the First Motion, Plaintiffs cite to the declaration of James Taylor-Copeland filed in support of Plaintiffs' renewed motion for a temporary restraining order and an accounting [R65-1] as providing containing "evidence showing that during the Class Period, Defendants received ETH from thousands of unique addresses." R212

Cir.2004), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008)).  Considering the foregoing, to the extent that the District Court had concerns, doubts, or questions regarding Plaintiffs' proposed methods for ascertaining class membership set forth in the First Motion, it should have, at minimum, provided Plaintiffs with the opportunity to address them.

Indeed, this Circuit's "precedent requires the court to conduct an evidentiary hearing on class certification when there is any doubt about the issue, even when counsel fails to move for such a hearing."  *Morrison v. Booth*, 730 F.2d 642, 643–44 (11th Cir. 1984) (citing *Satterwhite v. City of Greenville,* 578 F.2d 987, 993 n. 7 (5th Cir.1978) (en banc), *vacated on other grounds,* 445 U.S. 940, 100 S.Ct. 1334, 63 L.Ed.2d 773 (1980)); *see also Mills*, 511 F.3d 1300, 1309 ("[T]he district court's class certification ruling was premature under the particular circumstances of this case. . . . precedent also counsels that the parties' pleadings alone are often not sufficient to establish whether class certification is proper, and the district court will need to go beyond the pleadings and permit some discovery and/or an evidentiary hearing to determine whether a class may be certified.") (citing *Falcon,* 457 U.S. at 160).

In this case, Plaintiffs' proposed class and subclass definitions were sufficiently defined to enable class membership to be ascertained by reference to specific objective criteria. *See, e.g.*, *Alderman v. GC Servs. Ltd. P'ship*, No. 2:16-CV-14508, 2018 U.S. Dist. LEXIS 10205, at *8 (S.D. Fla. Jan. 19, 2018) (class found to be properly ascertainable "based on objective criteria that c[ould] be determined from Defendant's business records"). However, to the extent that there were any concerns regarding Plaintiffs' proposed methods, the District Court abused its discretion by depriving Plaintiffs the opportunity to address such concerns or conduct pre class certification discovery. As discussed *supra*, Plaintiffs were unable to obtain discovery due to the PSLRA's automatic discovery stay, the inability to obtain expedited discovery, lack of a scheduling order, and due to the District Court's Order to move for Default Judgment before proper discovery could commence.

As frequently held by courts in this Circuit, a determination of class ascertainability generally is to follow class discovery, rather than precede it. *See Manno v. Healthcare Revenue Recovery Grp.*, LLC, No. 11-61357, 2012 WL 4192987, at *2–3 (S.D. Fla. Sept. 18, 2012) ("Indeed, it strikes this Court as untenable to rule at this stage that Plaintiff's class certification motion fails and, at the same time, Plaintiff is not entitled to the very discovery that may establish an

essential element of the class."); *Maximiliano v. Simm Assocs.*, No. 17-cv-80341, 2017 U.S. Dist. LEXIS 226075, at \*7 (S.D. Fla. Nov. 7, 2017) ("Plaintiff cannot determine whether he should seek class certification without at least having the opportunity to explore the ascertainability . . . of the putative class [through discovery]."). In fact, courts in this Circuit have found that "**[a]n order on class certification is premature prior to discovery** and the parties having an opportunity to thoroughly brief the Rule 23 requirements." *Daniel*, 328 F. Supp. 3d at 1322.

Therefore, rather than denying the First Motion outright and in order to obtain such specifying information, the District Court should have allowed for class discovery. *See Carrera v. Bayer Corp.*, 727 F.3d 300, 312 (3d Cir. 2013) (remanding so that plaintiff could "conduct further, limited [class] discovery on the issue of ascertainability and [be] afforded another opportunity to satisfy the ascertainability requirement."); *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 440–41 (3d Cir. 2017) ("because the [sic] Creditsmarts database was not produced during discovery, plaintiff was denied the opportunity to demonstrate whether a reliable, administratively feasible method of ascertaining the class exists based, in whole or in part, on that database.").[19]

---

[19] The District Court's determination that "the government's spreadsheet, if provided

Without the opportunity for discovery, Plaintiffs were denied the chance to properly determine how the Class would be ascertained, and could only elaborate insofar as the information was available to them. The District Court therefore abused its discretion in denying Plaintiffs' First Motion on the issue of ascertainability. *See Mills,* 511 F.3d 1300, 1309 ("Mills at least should have been granted an opportunity to conduct limited discovery relevant to the certification issue . . . Accordingly, we conclude only that the district court erred in determining that class action treatment was inappropriate as a matter of law."); *Herrera*, 648 F. App'x at 934–37 (reversing a district court's striking of class allegations without allowing for limited discovery in support of the elements of Rule 23); *Id.* at 933, n.1 ("The district court's order striking Plaintiffs' class allegations "is the functional equivalent of denying a motion to certify the case as a class action."); *Arkin v. Innocutis Holdings*, LLC, 188 F. Supp. 3d 1304, 1311 (M.D. Fla. 2016) (same).

---

to the Plaintiffs, would only partially cover one of the three subclasses proposed by the Plaintiffs" was made in error as well. The Centra Spreadsheet was only referenced as an example of the type of documentation that would afford ascertainability—not as the sole source of such information. *See* First Order, at 5; *City Select Auto Sales,* 867 F.3d 434, at 441 ("Plaintiff need not, at the class certification stage, demonstrate that a single record, or set of records, conclusively establishes class membership.").

## II. The District Court Abused Its Discretion in Denying Plaintiffs' Renewed Motion for Class Certification

### A. The District Court Abused Its Discretion By Refusing to Consider the Merits of the Renewed Motion Despite Having Explicitly Approved Its Filing

On October 1, 2019, the District Court granted Plaintiffs leave to file their renewed and amended motion for class certification by issuing the following Paperless Order:

> The Court grants 237 the Plaintiffs' motion to exceed the page limit in their renewed motion for class certification. As stated in Local Rule 15.1, the Plaintiffs must separately refile their motion by October 3, 2019."

R. 238.

S.D. Fla. L.R. 15.1 provides, in relevant part, that:

> Any amendment to a pleading, whether filed as a matter of course or upon a successful motion to amend, must, except by leave of Court, reproduce the entire pleading as amended, and may not incorporate any prior pleading by reference. When a motion to amend is granted, the amended pleading shall be separately filed and served forthwith.

In other words, once a court in the Southern District of Florida permits leave to amend under L.R. 15.1 "an amended motion completely replaces all prior motions, supplements, and amendments; and all earlier filings are disregarded." *O'Connor v. Inch*, No. 17-60234-CV-COHN, 2019 U.S. Dist. LEXIS 123524, at *5 n.7 (S.D. Fla. July 23, 2019) (citing S.D. Fla. Loc. R. 15.1). Based on

the foregoing, there should be no doubt that the District Court had granted leave to file, and had undertaken to review fully, Plaintiffs' Renewed Motion. Indeed, in granting Plaintiffs an extension of time to file a renewed motion for default judgment, the District Court ruled that "The Plaintiffs' renewed motion is due two weeks after the Court's ruling on the Plaintiffs' motion for class certification." R241.

The Renewed Motion was filed on October 1, 2019 and sought certification of the following revised and amended class:

> All persons or entities who purchased or otherwise acquired Centra Tech Tokens ("CTR Tokens") directly from Defendant Centra Tech in connection with its "official" initial coin offering from July 23, 2017 through October 5, 2017 ("Class Period").

R239 at 2.

Plaintiffs' Renewed Motion addressed each of the District Court's bases for denying the First Motion, included an amended and revised narrower proposed class definition, and submitted newly obtained evidence to support certification. R239; R248; R250. Plaintiffs' Renewed Motion also set out a detailed claims process through which members of the Class could be ascertained, and explained how Plaintiffs could obtain records identifying Class members. R239 at 17–4. Furthermore, the Renewed Motion submitted an affidavit from a claims

administrator attesting to the administrative feasibility of conducting a claims process.

Despite the foregoing, the District Court's Second Order erroneously determined that: "On October 1, 2019, the Plaintiffs, without seeking leave of Court, filed a renewed motion for class certification." R258 at 1. The Record clearly demonstrates that the District Court had, in fact, granted Plaintiffs leave to replace the First Motion with the Renewed Motion. Most notably, the District Court used this line of reasoning to acknowledge that while Plaintiffs' Renewed Motion fully addressed the District Court's bases for its initial denial of class certification, such bases should have been addressed in Plaintiffs' initial motion for class certification and, thus, it would deny the Renewed Motion regardless. The District Court's refusal to "consider" Plaintiffs' Renewed Motion under Rule 23 constitutes a reversable abuse of discretion—particular in light of it having previously authorized its filing. *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (finding abuse of discretion where as the "district court failed to conduct a rigorous analysis of [Rule 23's] predominance and superiority")

In this case, Plaintiffs' Renewed Motion, as the District Court acknowledged, provided greater analysis regarding the ascertainability of the Class. *See* Second Order at 3 ("The Plaintiffs' [renewed] motion specifically addresses the Court's

concerns in the [first] Order.").[20]  Furthermore, Plaintiffs submitted a Notice

informing the District Court that it had obtained a copy of the Centra Spreadsheet.

R248.  In that notice, Plaintiffs informed the District Court that the Centra

Spreadsheet included:

- contact information for over 1,200 members of the proposed class who, collectively, engaged in over 3,800 purchases of Centra Tokens from July 25, 2017 through October 5, 2017 (the "Class Period")—including each investors' full name, address, telephone number, and email address;

- the amount of digital funds Centra Tech received from proposed class members' purchases of Centra Tokens during the Class Period;

- transaction hash numbers for over 3,500 purchases of the proposed class members' purchases of Centra Tokens during the Class Period;

- the public digital wallet addresses identifying the digital wallets used by proposed class members to purchase Centra Tokens during the Class Period; and

*Id.*

As stated in Plaintiffs' Reply on the Renewed Motion, the Centra Spreadsheet

"contains information identifying approximately 90% of the members of the

Renewed Motion's proposed Class, if not more."  R250 at 8.  Thus, Plaintiffs'

Renewed Motion should have been considered on its merits.

---

[20] Plaintiffs maintain that their First Motion was successful on the merits, and that class certification should have been granted based on the First Motion.

In reviewing a renewed motion for class certification, courts in the Eleventh Circuit treat such motions like original motions—in other words, they are reviewed for compliance with Rule 23. *See Escolastico De Leon-Granados v. Eller & Sons Trees*, No. 1:05-CV-1473-CC, 2006 U.S. Dist. LEXIS 73781, at *9 (N.D. Ga. Sep. 28, 2006) (reviewing a renewed motion for class certification after the court allowed for class discovery, and "in determining whether plaintiffs have met their burden, [stating that] **the court's inquiry is limited** to ascertaining whether the prerequisites of Rule 23 are satisfied.").

Circuits courts, including this Circuit, judge review renewed motions for class certification for compliance with Rule 23 as well. *See DeLeon-Granados v. Eller & Sons Trees, Inc.,* 497 F.3d 1214, 1220 (11th Cir. 2007) (in analyzing the adequacy of a renewed motion for class certification, stating: "A party seeking to maintain a class action bears the burden of demonstrating that class certification is proper [under Rule 23]."); *Turnage v. Norfolk S. Corp.*, No. 05-0509, 2006 U.S. App. LEXIS 11674, at *3 (6th Cir. Apr. 28, 2006) ("The plaintiffs' petition for leave to appeal is [denied] without prejudice to the plaintiffs producing additional evidence in support of a renewed motion for class certification that addresses the district court's concerns regarding the typicality requirement.") (citing FED. R. CIV. P. 23(c)(1)(C)); *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 539 n.5 (2d Cir.

2015) ("Nevertheless, although the district court's certification order was erroneous in light of the new legal standard we have announced today, we cannot foreclose the possibility that a renewed motion for class certification might succeed on remand under our revised standard.").

Therefore, in denying the Renewed Motion based primarily on the stated basis that a motion for reconsideration would have been more appropriate, rather than reviewing Plaintiffs' Renewed Motion on the merits under Rule 23, the District Court ignored precedent and abused its discretion. *See Alikhani v. United States*, 200 F.3d 732, 734 (11th Cir. 2000) ("An error of law is an abuse of discretion per se."); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.").

## B. The District Court Abused its Discretion in Treating the Renewed Motion as a Motion for Reconsideration

The District Court abused its discretion in applying the standards of review for a motion for reconsideration to Plaintiffs' Renewed Motion. Plaintiffs submitted and filed their Renewed Motion as a new motion for class certification, and not as a motion for reconsideration. However, in ruling on Plaintiffs' Renewed Motion, the District Court stated: "These are arguments more appropriate for a motion for

reconsideration as the Plaintiffs are arguing directly against the position taken by the Court in its [first] Order" and "the Plaintiffs' motion specifically addresses the Court's concerns in the [first] Order. This, however, is an inappropriate use of a renewed motion for class certification." Second Order, at 2–3.

As a preliminary matter, Plaintiffs' filing of their motion as a Renewed Motion is appropriate under this Circuit's controlling case law, as motions for class certification can be renewed without prejudice arising from **any** prior denials under Rule 23. *See Reyes*, 2018 U.S. Dist. LEXIS 106449, at \*13 ("'Rule 23(c)(1) specifically empowers district courts to alter or amend class certification orders at any time prior to a decision on the merits.'") (citations omitted); *Andreas-Moses v. Hartford Fire Ins. Co.*, 326 F.R.D. 309, 320 (M.D. Fla. 2018) ("Indeed, 'the power of the district court to alter or amend class certification orders at any time prior to a decision on the merits 'is critical, because the scope and contour of a class may change radically as discovery progresses and more information is gathered about the nature of the putative class members' claims.'") (quoting *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 988 (11th Cir. 2016)). Thus, the fact that the Court denied the First Motion did not properly change the standard of review for the Court's consideration of the Renewed Motion, or somehow convert it to a motion for

reconsideration. *See, e.g.*, *Neumont v. Florida*, 198 F.R.D. 554, 555 (S.D. Fla. 2000) (analyzing a renewed motion for class certification under Rule 23).

In the Second Order, the District Court determined that a Renewed Motion was inappropriate, stating: "While it is true that Rule 23(c)(1) empowers district courts to alter or amend class certification orders at any time prior to a decision on the merits, the rule contemplates new evidence, changed circumstances, or new information about the class members' claims." R258 at 2 (referencing *Prado-Steiman v. Bush*, 221 F.3d 1266, 1273 (11th Cir. 2000) ("This power is critical, because the scope and contour of a class may change radically as discovery progresses and more information is gathered about the nature of the putative class members' claims."). Yet in the very next sentence of the decision in *Prado-Steiman*, the Eleventh Circuit stated with specificity what Rule 23 contemplates: "Indeed, Rule 23 contemplates that the class certification decision will be made prior to the close of discovery." *Id.* In this case, Plaintiffs were unable to obtain any class discovery due to the limitations imposed by the PSLRA, and because the District Court required Plaintiffs to move for default judgment before any sort of class discovery could commence.

Moreover, the Eleventh Circuit in *Prado-Steiman* explicitly stated that the ability of the District Court to consider renewed class certification motions on the

merits is specifically intended to avoid appeals to federal circuit courts: "Given these numbers [of appeals], and the large volume of ordinary final judgments that by law must be considered by the courts of appeals, routinely granting interlocutory appellate review of class certification decisions is simply not practicable." *Id.* at 1273. Though not an interlocutory appeal, an appeal was nevertheless unavoidable in this situation due to the District Court's ordering Plaintiffs to move for default judgment before class discovery could be obtained and refusal to consider the merits of Plaintiffs' Renewed Motion and after. *See id.* at 1273-74 ("class certification determinations are so fluid and fact-sensitive that district courts should be encouraged rather than discouraged from reassessing whether the prerequisites of Rule 23 exist and whether a class action is the most efficacious way to resolve the dispute"); *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 294 (1st Cir. 2000) ("We should err, if at all, on the side of allowing the district court an opportunity to fine-tune its class certification order . . .").

The District Court's Second Order also relied upon *Terrill v. Electrolux Home Prods.*, a Southern District of Georgia case. The District Court cited *Terrill* for the proposition that, while the Eleventh Circuit has not established a standard for when parties can revisit the issue of class certification, district courts interpreting Rule 23(c) "have suggested that revisiting the class certification issue would be

appropriate if subsequent developments so require, upon a showing of new evidence **or some other appropriate ground**, or a demonstration of changed circumstances." *See* Second Order, 2; *Terrill v. Electrolux Home Prod., Inc.*, 274 F.R.D. 698, 700 (S.D. Ga. 2011) (emphasis added). Importantly, district courts interpreting Rule 23(c) have found appropriate grounds to include "**clarified circumstances**." *See Washington v. Vogel*, 158 F.R.D. 689, 692–93 (M.D.Fla.1994); 2 H. Newberg and A. Conte, *Newberg on Class Actions* (3d ed. 1992) § 7.47 at 7–146. In fact, in determining which subsequent developments would permit revising class certification, the court in *Terrill* found: "something has changed—Plaintiffs have offered new evidence to the Court, belatedly obtained because Defendant did not produce the evidence until after the close of class certification discovery and after Plaintiffs had filed their original motion for class certification." *Terrill*, 274 F.R.D. 698, 701. Again, class discovery was not available to Plaintiffs **at all**, and so Plaintiffs had to do their best with the information they had. More importantly, Plaintiffs, in fact, did submit newly obtained evidence in support of the Renewed Motion, including the Centra Spreadsheet which the District Court failed to even acknowledge in its Second Order.

Plaintiffs sought class certification per Rule 23's requirement of a determination on class certification at an early practicable time, and only because

the District Court ordered Plaintiffs to move for default judgment before class discovery could take place. Thus, absent any missed deadlines, Plaintiffs were unaware of any issue regarding timeliness, and could not have addressed such issues in their First Motion. Indeed, the District Court provided Plaintiffs with less than two weeks notice to prepare and file both their Motion for default judgment as well as the First Motion. In regards to ascertainability, **no new theories were asserted** in the Renewed Motion. Rather, Plaintiffs **merely clarified** the methods to be used for ascertaining the class. *See* Renewed Motion, 17–24. Accordingly, applying the District Court's incorrect legal standard, the clarified circumstances as to timing ascertainability, as well as newly obtained evidence, provided valid grounds for the District Court to consider the Renewed Motion, and ordering otherwise while applying the incorrect legal standard was a clear abuse of discretion. *See Brown*, 817 F.3d at 1234 (finding the district court abused its discretion when it applied the wrong standard on a review of a motion for class certification); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 819 (7th Cir. 2012) ("[b]ecause the district court applied the wrong legal standard when analyzing plaintiffs' motion for class certification, the district court abused its discretion."); *Sali v. Corona Reg'l Med. Ctr.*, 889 F.3d 623, 627 (9th Cir. 2018) ("[t]he district court abused its discretion when it used the wrong standard and denied class certification under FED.

58

R. Civ. P. 23 . . .”); *Shook v. El Paso Cnty.*, 386 F.3d 963, 965 (10th Cir. 2004) (“[a]n abuse of discretion occurs where the district court misapplies the Rule 23 factors in deciding whether class certification is appropriate.”).

## C.     The District Court Deprived Plaintiffs Of An Opportunity to Propose A Revised or Narrowed Class Definition

If Plaintiffs' original proposed class definition failed to sufficiently define the boundaries of the class, the District Court should have granted Plaintiffs an opportunity to propose a new class definition and amend their class allegations. The Federal Rules of Civil Procedure strongly promote a policy of amendment to cure deficient class definitions. *See Prado-Steiman,* 221 F.3d 1266, 1273 (“‘Rule 23(c)(1) specifically empowers district courts to alter or amend class certification orders at any time prior to a decision on the merits.’”)); *Andreas-Moses*, 326 F.R.D. 309, 320 (“Indeed, ‘the power of the district court to alter or amend class certification orders at any time prior to a decision on the merits 'is critical, because the scope and contour of a class may change radically as discovery progresses and more information is gathered about the nature of the putative class members' claims.’”). Thus, “[d]ismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment.” *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 655 (9th Cir. 2017).

Furthermore, in the Eleventh Circuit, "if, through further proceedings . . . plaintiffs are able to clarify and better support the need for class certification, the district court remains free to revisit the issue." *Hudson v. Delta Air Lines*, 90 F.3d 451, 458 (11th Cir. 1996). Indeed, the Supreme Court has stated that when a court denies certification of a class it would expect that court to reassess and revise such an order in response to events "occurring in the ordinary course of litigation." *See Holt v. Ford*, 862 F.2d 850, 852 (11th Cir. 1989) (citing *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S. Ct. 2454, 2458, 57 L. Ed. 2d 351 (1978)).

Therefore, in this Circuit, "often plaintiffs amend the proposed class definitions as needed." *Economakis v. Butler & Hosch*, No. 2:13-cv-832-FtM-38DNF, 2014 U.S. Dist. LEXIS 26779, at *12 (M.D. Fla. Mar. 1, 2014) (allowing plaintiff to "[change] the time frame within the definition of the "Class" or "Class Members."); *see also Jackson v. Nat'l Action Fin. Servs.*, Inc., 227 F.R.D. 284, 286 (N.D. Ill. 2005) ("[T]he Court may modify the definition of a proposed class if such modification will remedy an inadequacy in the plaintiff's definition."); *Wallace v. VF Jeanswear Ltd. P'ship*, No. 5:18-cv-2009-AKK, 2020 U.S. Dist. LEXIS 35291, at *2 (N.D. Ala. Mar. 2, 2020) ("[i]n lieu of dismissal, however, the court will afford the plaintiffs an opportunity to amend their pleadings regarding the proposed class definition."); *see also Santomenno v. Transamerica Life Ins. Co.*, 316 F.R.D. 295,

302 (C.D. Cal. 2016) (noting that courts "frequently allow successive class certification motions where a previous motion is denied but there is a colorable claim that could be classified.").

Here, Plaintiffs filed only one renewed motion for class certification, and the District Court did not deny Plaintiffs' class allegations with prejudice.[21] However, the District Court's Second Order did not allow any opportunity to advance a revised class definition, and constructively denied Plaintiffs leave to amend their complaint. *See* R258, at 3 ("The Court is not "persuaded that [it] should require that [the plaintiffs] get a second bite at the class certification apple . . .") (citations omitted). Furthermore, by ordering Plaintiffs to move for Default Judgment, **the ability for Plaintiffs to retool the definition of the class was effectively foreclosed**. *See Gates v. Syrian Arab Republic*, 396 U.S. App. D.C. 128, 128, 646 F.3d 1, 1 (2011) ("pleadings cannot be amended on appeal") (citing FED. R. CIV. P. 15(a)).

Plaintiffs have alleged a valid class action claim with sufficient support. Thus, Plaintiffs should have been afforded an opportunity to amend their class definition prior to a denial of class certification, and in restricting Plaintiffs' ability to do so,

---

[21] In the Renewed Motion, Plaintiffs proposed the following revised definition of the proposed class: "All persons or entities who purchased or otherwise acquired CTR Tokens directly from Defendant Centra Tech in connection with its "official" initial coin offering from July 23, 2017 through October 5, 2017." Renewed Motion, at 18.

the District Court abused its discretion. *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1110 (11th Cir. 1996) ("[T]he Court is constrained to allow a plaintiff leave to amend unless there is substantial countervailing reason."); *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 117 (4th Cir. 2013) ("[T]he district court erred in concluding that amendment would be futile [in satisfying Rule 23] and in denying leave to amend the complaint. The district court therefore should revisit the certification question when the record underlying the allegations in the amended complaint has been more fully developed.").

## CONCLUSION

The district court abused its discretion in determining the propriety of class certification without allowing Plaintiffs the opportunity to address its concerns or obtain class discovery. Additionally, the District Court abused its discretion by refusing to consider the merits of Plaintiffs' Renewed Motion for class certification. The Court should reverse that ruling and remand with the direction that the District Court should review the merits of Plaintiffs' Renewed Motion for class certification under Rule 23 or that Plaintiffs be permitted to conduct discovery on the class issues so that class certification may be decided on a developed record.

Respectfully submitted this 17th day of April, 2020.

Emily Komlossy (FBN 7714)
KOMLOSSY LAW P.A.
4700 Sheridan St., Suite J
Hollywood, FL 33021
Phone: (954) 842-2021
Fax: (954) 416-6223


James Taylor-Copeland
(*pro hac vice application pending*)
TAYLOR-COPELAND LAW
james@taylorcopelandlaw.com
501 W. Broadway Suite 800
San Diego, CA 92101
(619) 400-4944

*/s/ Donald J. Enright*
Donald J. Enright
LEVI & KORSINSKY, LLP
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Telephone: (202) 524-4290
Fax: (202) 333-2121


John A. Carriel
ZELLE LLP
1775 Pennsylvania Ave, NW,
Suite 375
Washington, DC 20006
Telephone: (202) 899-4111
Facsimile: (612) 336-9100

*Attorneys for Plaintiffs-Appellants*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) as the brief contains 12,268 words, excluding those parts exempted by 11th Cir. Local R. 32-4.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) as this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

*/s/ Donald J. Enright*

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2020, 7 copies of the brief were dispatched for delivery to the Clerk's Office of the United States Court of Appeals for the Eleventh Circuit by third-party commercial carrier for overnight delivery at the following address:

David J. Smith
Clerk of Court
U.S. Court of Appeals for the 11th Circuit
56 Forsyth St., N.W.
Atlanta, Georgia 30303

On this same date, a copy of the brief was served on the following via third party commercial carrier for delivery within 3 days:

Frank E. Gil
The Law Office of Frank E. Gil, PA
5760 NE 72nd Ave.
Miami, FL 33166-4210

*/s/ Catherine B. Simpson*
Counsel Press
1011 East Main Street
Richmond, VA 23219
(804) 648-3664

Filing and service were performed by direction of counsel